# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00183-COA

**GREG A. FORTENBERRY A/K/A GREG FORTENBERRY A/K/A GREG ANTONIO FORTENBERRY A/K/A "RED"**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2015 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION | CONVICTED OF FIRST-DEGREE MURDER, CONSPIRACY TO COMMIT FIRST-DEGREE MURDER, THIRD-DEGREE ARSON, CONSPIRACY TO COMMIT THIRD-DEGREE ARSON, AND POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCED ON EACH COUNT TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF REDUCTION, SUSPENSION, PROBATION, OR PAROLE, AND TO PAY A FINE OF $1,000 ON EACH COUNT |
| DISPOSITION: | AFFIRMED - 07/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. On January 29, 2015, the Circuit Court of Pike County denied Greg Fortenberry's motion for a new trial. Fortenberry raises three issues on appeal. First, Fortenberry argues that the trial court abused its discretion when it admitted photographs depicting the condition in which the murder victim's body was found. Second, Fortenberry argues that the jury's verdict was against the overwhelming weight of evidence. Last, Fortenberry argues that all of the errors committed during his trial deprived him of a fundamentally fair and impartial trial and that the errors combined constitute reversible error. Finding no error, we affirm.

**FACTS**

¶2. On August 16, 2013, Kenneth Thompson went to the police department in McComb, Mississippi, to report his fourteen-year-old son, Blake Thompson, missing. Kenneth had been searching for Blake since August 11, 2013. With the deputies' assistance, Kenneth found Blake in the Pleasant Grove Community, but lost him again in a wooded area. Later that same day, Detective Robert Holmes learned that Blake had been hiding out with Lajerrious Perkins and Fortenberry at Jasper Pittman's home.

¶3. Two days later, Rosa Gatlin, Kenneth's fiancée, reported Kenneth missing. Officers suspected that Blake, Fortenberry, and Perkins were involved with Kenneth's disappearance. The three men had been seen in Kenneth's truck at Edgewood Mall on August 18, 2013. Later that day, Fortenberry and Perkins were taken into custody by McComb police officers. Pittman brought Blake to the police department. Detective Holmes discovered where Kenneth's body was located after talking with Blake and Pittman.

¶4. The officers found Kenneth's body in a wooded area behind Pittman's house. They

were led to the location by Blake. Kenneth's body had been covered with debris and shrubs. The officers recovered a blue t-shirt and a shovel with a broken handle. Pittman's home was searched, but there was no indication that the crime had occurred there. The officers did find multiple items of evidence, including bloody rags, blood-covered clothing, various items that had blood on them, and items that appeared to have belonged to Kenneth. The officers also found four clean knives in the kitchen sink. Kenneth's truck was found in a nearby wooded area. The vehicle was behind an abandoned house, and it was burned beyond recognition.

¶5. Detective Lance Falvey spoke with Fortenberry several times after the arrest. The first time he spoke with Fortenberry was August 20, 2013. Fortenberry declined to sign a *Miranda* waiver form, but he did choose to speak with Detective Falvey after his *Miranda* warning was given.[1] Fortenberry also signed a "consent to search" form that allowed the detective to swab Fortenberry's mouth for a DNA sample. During this interview, Fortenberry denied being involved in the murder and claimed that he was asleep at Pittman's house. Fortenberry, however, admitted to riding through town with Blake and Perkins in Kenneth's truck.

¶6. On August 22, 2013, Fortenberry initiated another meeting with the detective. Fortenberry wanted his lawyer to be present for this meeting. Detective Falvey called Ben Gilbert, Fortenberry's lawyer, and the interview stopped because the lawyer was not present.

¶7. On September 12, 2013, two days after Fortenberry's preliminary hearing, Fortenberry sent a note expressing that he wanted to talk again. Detective Todd Dillon met with

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Fortenberry for the interview. During this interview, Fortenberry admitted that he was present during the murder but claimed that Perkins committed it. According to Fortenberry, Perkins flagged down Kenneth and asked him to take them to the store. Perkins also told Kenneth that he knew where to find his son. Fortenberry stated that their true intention at that time was to kill Kenneth.

¶8. On September 20, 2013, the detectives received a letter from Fortenberry asking to speak to them. Fortenberry again stated Perkins stabbed Kenneth. He also admitted that he was a part of the pre-planning, carrying out, and attempt to cover up the murder. He told the detectives that he, Perkins, and Pittman agreed to take Kenneth's truck to Pittman's family's land a few miles away to dispose of it. Pittman, however, decided to drive them to the area before they drove Kenneth's truck there. Pittman's truck ran out of gas after they left, and Pittman went to his neighbors' home to borrow a can of gas. Pittman put gas in the truck and saved the rest. Pittman drove Fortenberry and Perkins to the land, and the three of them returned to Pittman's house. Afterward, Fortenberry and Perkins took Kenneth's truck to the area Pittman had shown them and set the truck on fire.

¶9. On September 23, 2013, Fortenberry spoke with the detectives again. Fortenberry confessed that every part of his story was true except the part about who killed Kenneth. During this interview, Fortenberry admitted to stabbing Kenneth. Fortenberry stated that he stabbed Kenneth, and Perkins drove the truck back to Pittman's house. Kenneth died en route. Fortenberry stated that Blake and Perkins helped him carry the body to the woods.

**PROCEDURAL HISTORY**

4

¶10.    On April 1, 2014, the grand jury of Pike County indicted Fortenberry for murder in violation of Mississippi Code Annotated section 97-3-19 (Rev. 2014), conspiracy to commit murder in violation of Mississippi Code Annotated sections 97-1-1 (Rev. 2014) and 97-3-19, third-degree arson in violation of Mississippi Code Annotated section 97-17-7 (Rev. 2013), conspiracy to commit third-degree arson in violation of Mississippi Code Annotated sections 97-1-1 and 97-17-7, and possession of a weapon by a convicted felon in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014).  Fortenberry was found guilty by a jury of his peers on all charges.  The trial court sentenced Fortenberry on all counts to serve concurrent life sentences in the custody of the Mississippi Department of Corrections, without the possibility of parole.  Fortenberry filed a motion for a new trial, which the trial court denied.  Fortenberry now appeals.

## DISCUSSION

I.      **Whether the trial court erred in allowing the introduction of photographs depicting the victim's injury and the crime scene.**

¶11.    We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Stringer v. State*, 131 So. 3d 1182, 1187 (¶18) (Miss. 2014).  " [P]hotographs of a victim have evidentiary value when they aid in describing the circumstances of the killing; describe the location of the body and cause of death; or supplement or clarify [a] witness ['s] testimony." *Keller v. State*, 138 So. 3d 817, 857 (¶101) (Miss. 2014) (citations omitted).

¶12.    Fortenberry argues that the trial court erred in allowing the introduction of autopsy and crime-scene photos. Fortenberry contends that the photos were gruesome, irrelevant, and highly prejudicial. At trial, defense counsel objected to the admissions of six crime-scene

5

photos.  Defense counsel argued that some of the photos were duplicates, and that the number of pictures was inflammatory and prejudicial to Fortenberry.  The following exchange occurred:

[DEFENSE COUNSEL]:  I'm going to enter an objection as to the volume of these photographs.  Some of them seem to be duplicative, and it strikes me as highly inflammatory and prejudicial to the Defendant, just to the volume of them.  They seem to be extreme.

BY THE COURT:  Well, I would have to see them to make any judgment on that.

. . . .

[DEFENSE COUNSEL]:  Those are the two that I was referring to, your Honor.  There were two that I thought were essentially alike.

BY THE COURT:  The State has moved to introduce twelve photographs taken by [Investigator Greg] Nester during his investigation of the crime scene. [Defense counsel] has entered an objection that they are duplicative . . . .

. . . .

BY THE COURT:  All right.  He's going to take one of those out[.] Does that satisfy [defense counsel] in that regard?

[DEFENSE COUNSEL]:  It does, your Honor.

BY THE COURT:  All right.  Anything else?

[DEFENSE COUNSEL]:  No, your Honor.

BY THE COURT:  The rest of them you have no objection to[,] . . . is that correct?

[DEFENSE COUNSEL]:  No, your Honor.

Later in the trial, when the medical examiner was testifying, six more photos were introduced by the State. Defense counsel again objected to the volume of photos being admitted. Specifically, defense counsel objected to two photos that were close-ups of the injury to Kenneth's neck, arguing that they were identical. The trial court excluded one of those photos after determining that it was duplicative.

¶13. Our law is well settled that "objection[s] must be made with specificity, and failure to articulate the grounds for [an] objection constitutes a waiver of the alleged error." *Ross v. State*, 954 So. 2d 968, 987 (¶27) (Miss. 2007). Furthermore "asserting grounds for an objection on appeal that differ[] from the ground given for the objection at the trial level does not properly preserve the objection for appellate review." *Bursey v. State*, 149 So. 3d 532, 535 (¶5) (Miss. Ct. App. 2014) (internal quotation marks and citations omitted). The record before us shows that Fortenberry, during the trial, objected to the volume of photos being admitted because they depicted the same scene. The argument before this Court is not similar to the objection that was made at trial. Therefore, Fortenberry's appeal of this objection is procedurally barred.

¶14. Even if Fortenberry's argument were not procedurally barred, his objection to the admission of these photos would be without merit, because each photo meets all three of the above-mentioned requirements. The photos were necessary to describe the scene, to show the location of the body and the cause of death, and to aid Investigator Nester and the coroner in their testimony. The photographs merely displayed Kenneth's wounds and were probative to establish how Kenneth was murdered. This issue has no merit.

7

## II. Whether the trial court erred in denying Fortenberry's motion for a new trial.

¶15. Fortenberry filed a motion for a new trial challenging the weight of the evidence. It was denied. On review of a denial of a motion for a new trial, this Court weighs the evidence in the light most favorable to the verdict. *Boyd v. State*, 90 So. 3d 652, 654 (¶7) (Miss. Ct. App. 2012). In reviewing such claims, we sit as the thirteenth juror, and a new trial should be granted only in exceptional cases when the evidence preponderates heavily against the verdict. *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). We accept as true all evidence in favor of the State, and we reverse only if the trial judge abused his discretion. *Price v. State*, 892 So. 2d 294, 297 (¶11) (Miss. Ct. App. 2004).

¶16. Fortenberry concedes that there is evidence that implicates his involvement, but asserts that there is no firm evidence linking him to the murder. Fortenberry points to the fact that the only physical evidence linking him to the murder was his fingerprints on some of Kenneth's papers from Kenneth's truck and Kenneth's blood on a shirt allegedly worn by Fortenberry. Fortenberry also argues that the three eyewitnesses' testimony, which linked him to the murder, could have been wrong because eyewitnesses are sometimes mistaken.

¶17. We find that the evidence did not preponderate so heavily against the verdict as to cause an unconscionable injustice. We consider Fortenberry's argument that the State lacked firm physical evidence in light of his confession. Fortenberry admitted, in a videotaped interview that was admitted at trial, that he stabbed and killed Kenneth with a large butcher knife. This Court has held that "the weight and credibility of an accused's confession is for the jury to decide." *Cheatham v. State*, 12 So. 3d 598, 602 (¶13) (Miss. Ct. App. 2009)

8

(citation's omitted). While Fortenberry claims the three eyewitnesses could have been mistaken, we have found that "factual disputes are properly resolved by the jury and do not mandate a new trial." *Id*. at (¶16). The jury heard testimony from the investigator and the three eyewitnesses, and were presented Fortenberry's confession. In reaching a guilty verdict, the jury resolved any factual disputes and found Fortenberry's confession credible. Accordingly, we find that the verdict was not against the overwhelming weight of the evidence.

### III. Whether there was cumulative error that deprived Fortenberry of his right to a fundamentally fair and impartial trial.

¶18. Last, Fortenberry argues that the trial court's violation of the Mississippi Rules of Evidence by allowing certain photos to be shown to the jury, the lack of reliable evidence, questionable witness testimony, and a questionable confession add up to reversible error. Fortenberry argues that the cumulative effect of these individual errors deprived him of his fundamental rights. The Mississippi Supreme Court has held "individual errors, which are not reversible in themselves, may combine with errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007) (citing *Byrom v. State* 863 So. 2d 836, 847 (Miss. 2003)). "However, where there is no error in part[,] there can be no reversible error to the whole." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007) (citation omitted). Because we have found no error, there can be no cumulative error. Accordingly, this issue is without merit.

### CONCLUSION

9

¶19. The issues presented are without merit. The trial did not err when it admitted the photographs depicting the crime scene and the extent of the victim's injury; the jury's verdict was not against the overwhelming weight of the evidence; and no error occurred in this case, so cumulative error does not apply. This Court affirms the trial court's denial of Fortenberry's motion for a new trial.

¶20. **THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF FIRST-DEGREE MURDER, CONSPIRACY TO COMMIT FIRST-DEGREE MURDER, THIRD-DEGREE ARSON, CONSPIRACY TO COMMIT THIRD-DEGREE ARSON, AND POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCE ON EACH COUNT OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF REDUCTION, SUSPENSION, PROBATION, OR PAROLE, WITH ALL COUNTS TO RUN CONCURRENTLY AND TO PAY A FINE OF $1,000 ON EACH COUNT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**